# EXHIBIT A

Clerk of the Superior Court
*** Electronically Filed ***
A. Mariscal, Deputy
7/24/2025 5:02:08 PM
Filing ID 20262242

Daniel B. Treon (014911)
**TREON & SHOOK, PLLC**
4600 N. 12th Street
Phoenix, Arizona 85014
Phone: (602) 265-7100
Facsimile: (602) 265-7400
tsminutes@treonshook.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| **MCKINLEY INVESTMENT, LLC**, an Arizona limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>**PEKIN SELECT INSURANCE COMPANY**, a foreign insurer; **JOHN and JANE DOES 1-10**; **ABC CORPORATIONS 1-10**; and **XYZ PARTNERSHIPS 1-10**, fictitiously named.<br><br>Defendants. | Case No.: **CV2025-026014**<br><br>**COMPLAINT**<br><br>(Civil – Breach of Contract and Bad Faith) |

For this Complaint, Plaintiff Mckinley Investment, LLC ("Plaintiff" or "McKinley Investment") through undersigned counsel, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an Arizona limited liability company, with its principal place of businesses in Maricopa County, Arizona.

2. At times relevant to this Complaint, Plaintiff owned a commercial building in Maricopa County, Arizona.

3. Defendant Pekin Select Insurance Company (hereinafter "Defendant Pekin") is a foreign insurer engaged in the business of selling insurance in the State of Arizona.

4. Defendant Pekin caused events to occur within the State of Arizona which acts have given rise to the causes of action stated herein.

5. Defendants John and Jane Does I-X, ABC Corporations I-X and XYZ Partnerships I-X are individuals, corporations, or partnerships, respectively, or other incorporated or unincorporated associates subject to suit in a common name whose names are unknown to Plaintiff and who are, therefore, designated by fictitious names pursuant to Rule 10(f), Rules of Civil Procedure. Each of these Defendants caused Plaintiff's damages by breach of duties owed to Plaintiff or is responsible as a matter of law for acts of others who caused Plaintiff's damages by such negligence or breach of duty.

6. Venue is proper in this Court.

7. As a proximate result of the wrongful conduct of Defendant, Plaintiff has suffered damages in an amount in excess of the minimal jurisdictional limits of this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiff reasserts and re-avers each of the allegations set forth in the preceding paragraphs as through expressly set forth herein.

9. Plaintiff purchased a general liability and casualty insurance policy from Defendant Pekin, Policy No.: 006073931, which contract provided coverage for damages to Plaintiff's commercial property caused by perils.

10. Plaintiff purchased this policy to protect Plaintiff's assets and to provide Plaintiff with security and peace of mind in the event of a loss.

11. Plaintiff McKinley Investment, LLC is owned by Chris and Christina Foster.

12. The Fosters also own a construction company, CNC Contracting, LLC ("CNC Contracting").

13. Plaintiff McKinley Investment's commercial building leased spaces to three tenants: CNC Contracting; Higher Wire (a lithium-ion batter recycling company); and Arcadia Carts (an electric golf cart company).

14. Plaintiff's commercial property and sustained damage as a result of September 4th, 2024 and September 8th, 2024 fires and water suppression efforts.

15. The fires destroyed and or damaged the entire McKinley Investment building, including the three suites rented to the three tenants, CNC Contracting, Higher Wire, and Arcadia Carts, and the contents of these three suites.

16. The Pekin commercial policy was active and in force at the time of the fire.

17. Plaintiff commercial property became unusable due to the damage caused by the fire, smoke, and water used to extinguish the fire and toxic chemicals from lithium batteries stored on the property by one of the tenants.

18. Plaintiff timely reported the loss to Defendant Pekin.

19. Defendant Pekin unreasonably and in bad faith adjusted Plaintiff's claim, including but not limited to the following:

a. Defendant Pekin failed to adjust fully Plaintiff's loss thus leaving un-repaired significant damage to Plaintiff's property.

b. Defendant Pekin created an unreasonably narrow scope of damage estimate for the remediation and repair of Plaintiff's property, and delayed amending its too-narrow scope.

c. Defendant Pekin refused to fully adjust Plaintiff's loss by pitting its interests in paying a little as possible against Plaintiff's interests in accomplishing timely repair of his condominium. In so doing, Defendant Pekin denied Plaintiff equal consideration, by elevating its interests above those of its insured's interests.

d. Pekin failed to conduct a reasonable investigation into the scope of its insured's loss, in myriad ways, including but not limited to:

i) Pekin failed to bring into the loss investigation a cause and origin expert;

ii) Pekin failed to document with photographs the loss and damage to McKinley Investment's building;

iii) Although the Phoenix Fire Department investigation of the fire determined two separate fire incidents occurred, which two separate fire incidents

implicated a second loss under the Pekin policy and therefore a second availability of all policy limits, Pekin delayed concluding that a second loss occurred, and thus delayed payout of policy benefits. Timely payout of policy benefits would have allowed McKinley Investment to rebuild its building and thus begin to generate revenue through renting space to tenants. As a result, McKinley Investment has not been able to rebuild and thus has been damaged by the delay.

Through its adjuster Vince Furriel:

e. Defendant Pekin acted in bad faith by trying to intimidate Plaintiff McKinley Investment LLC's owners, Chris and Christina Foster, into accepting his determinations about the amount of loss as final and that Pekin would pay no more than what Mr. Furriel determined should be paid, based on his own decisions, and without consideration of the actual losses.

Mr. Furriel effected this intimidation by bringing a handgun and a law-enforcement badge to his first meeting with Chris and Christina Foster, on September 5, 2024, the day after the fire. He placed the weapon and badge on the table and claimed he was a law enforcement officer in addition to working as an insurance adjuster.

i) Mr. Furriel's comments and actions during this meeting were outrageous and intended to intimidate the Fosters and undermine the Foster's belief in their own claims, and to undermine their will to press their claims.

ii) Mr. Furriel's outrageous comments during this first meeting included him telling the Fosters that they faced divorce due to the upcoming stress that the loss of their building and adjustment process would cause them. Mr. Furriel's implication was clear: if the Fosters would just accept Mr. Furriel's determination of the loss amount, the adjustment would go quickly and without stress and thus the Fosters could save their marriage.

iii) Mr. Furriel furthered the intimidation by suggesting that the Fosters' marriage would become so strained by the stress of the loss of their business's building and adjustment that Chris Foster might turn to the comfort of prostitutes, but that he, Mr. Furriel, understood how a man might engage in that behavior given the stress. Mr. Furriel could prevent such bleak behavior if the Fosters would just place their trust in him and accept his value determination.

iv) At this first meeting, even before he inspected the loss site, Mr. Furriel attempted to get the Fosters to accept $650,000 as settlement of their company's loss.

v) Mr. Furriel's actions constituted unreasonable low-balling of Pekin's insured's claim.

vi) The Fosters, suspicious of Mr. Furriel's tactics and believing their destroyed building would take significantly more to replace than Mr. Furriel's effort to get them to take only $650,000, called their insurance agent Craig Breinholdt for advice regarding the offer. Mr. Breinholt talked to Mr. Furriel and Chris Foster, and explained the offer was unreasonably low and explained what he understood the loss to be including its much greater value as well as how the policy's coverages would work to pay out much more for the loss.

f. Soon thereafter, Mr. Furriel attended a site inspection of McKinley Investment's burned building with other insurance company adjusters and origin and cause investigators/expert witnesses and others, and Chris Foster.

i) At this site inspection, Mr. Furriel acted with extreme and outrageous verbal aggression toward other parties, attempted to seize control of the entire property and claimed he as representative of Pekin had total authority

over the premises, including the right to grant or deny any other person access, including Chris Foster.

ii) The point of Mr. Furriel's aggressive intimidation strategies was to cram down on McKinley Investment's loss valuation to pay out the claim for as little as possible.

iii) Mr. Furriel's conduct turned the adjustment into an adversarial experience for Pekin's insured.

g. Upon inspecting Plaintiff McKinley Investment's burned building, Mr. Furriel saw CNC Contracting business personal property that remained in its suite, as well as personal property kept on the site in the CNC Contracting suite, and owned by the Fosters. Mr. Furriel immediately coveted some of the property for his personal and his profit motives.

i) Mr. Furriel proceeded to pressure Chris Foster for Mr. Foster to give Mr. Furriel certain personal property that was in the CNC Contracting suite, or sell it to him very reduced prices.

ii) Mr. Furriel intimated to Chris Foster that adjustment of McKinley Investments' loss would go better for McKinley Investment if Mr. Foster would agree to give

or sell at a very steep discount some of CNC's and his personal property to Mr. Furriel.

iii) Mr. Furriel pressured Chris Foster to give or sell him Chris' classic car that Chris had been restoring, a 1969 Datsun 510, and 1972 GMC short bed pick-up truck.

iv) Mr. Furriel also pressured Chris Foster to give and/or sell him at steep discount various construction equipment items owned by CNC.

v) In each instance, and with respect multiple items of construction equipment, Mr. Furriel pressured Chris Foster for gift or sale, each time insinuating that adjustment of McKinley Investment's losses would be paid more and more quickly if Mr. Foster would agree to Mr. Furriel's desires for the personal property.

vi) Mr. Furriel also injected himself into analysis of and presentation of a loss claim of the Foster's wholly separate entity, CNC Contracting's business property loss. Mr. Furriel did this as part of his *quid pro quo* scheme, as described herein, essentially doing the Fosters a favor by advancing their CNC Contracting loss claim with Secura Insurance Company, which insured CNC

Contracting, so that the Fosters would acquiesce to Mr. Furriel's pressure that the Foster give or sell him, Mr. Furriel, more of their personal property and more of CNC Contracting's property.

20. Mr. Furriel secured some but not all payment of McKinley Investments loss. But he did so without documenting the facts of the loss with photographs of the damaged structure, complete estimates for repair, and other documentation necessary for loss adjustment and payment.

21. Mr. Furriel's supervisor approved of the payments to McKinley Investments.

22. Because of Mr. Furriel's misconduct, Pekin terminated Mr. Furriel.

23. Because of Mr. Furriel's misconduct, Pekin replaced Mr. Furriel with a different adjuster.

24. Because of Mr. Furriel's misconduct, Pekin terminated Mr. Furriel's supervisor and/or manager.

25. On information and belief, Mr. Furriel has acted as described herein to intimidate other Pekin insureds, including showing them his firearm and law enforcement badge, and pressuring them to give him or sell him at a steep discount the insured's personal property.

26. On information and belief, Mr. Furriel has acted as described herein to intimidate other Pekin insureds, including showing them his firearm and law enforcement badge, and pressuring them to give him or sell him at a steep discount the insured's personal property, including but not limited to an elderly business owner in Prescott, Arizona, a classic car company in Phoenix, Arizona, and a furniture store in Scottsdale, Arizona.

27. On information and belief, Defendant Pekin knew or had reason to know of Mr. Furriel's aggressive tactics with other Pekin insureds.

28. On information and belief, Defendant Pekin failed to conduct an adequate background investigation of Mr. Furriel, which would have revealed Mr. Furriel's aggressive tactics with other policy holders, including pre-loss litigation against him where he was accused of intentionally damaging property and threatening others related to property claims (*Braaten v. Vince Furriel Consulting*, CV2020-015576, Maricopa County Superior Court).

29. As a result of the conduct alleged herein, Pekin unreasonably delayed adjustment of the loss, including unreasonable delay of payment of money due under the second fire claim.

30. As a result of the conduct alleged herein, Pekin unreasonably delayed adjustment of the loss, including unreasonable delay of payment of money due under the second fire claim, which losses Plaintiff reasonably estimates to be $1,200,000 to $1,400,000 for the structure damage (ess $300,000 already paid, for a total of $900,000

to $1,100,000 still due), plus business income interruption losses for the second fire loss claim in the amount of $250,000, for a total of $1,150,000 - $1,350,000 still due for the second fire loss.

31. Pekin also has unreasonably delayed payment of additional amounts due under various other coverages within the policy, including but not limited to landscaping damages, code upgrades, and other coverages Pekin to pay McKinley Investment because of Mr. Furriel's scheme alleged herein.

32. Defendant Pekin's actions as alleged herein delayed adjustment of the claim and forced Plaintiff to incur the expense, delay and great frustration and aggravation of additional procedural hoops to get the benefits due to Plaintiff under the insurance contract.

33. Upon information and belief, Defendant Pekin acted in the manner it did as alleged herein so as to lower claims payments for its own benefit, including increasing payments to its parent corporation and increasing compensation and other benefits to its officers, managers, and employers.

**<u>COUNT I – BREACH OF CONTRACT</u>**

34. Plaintiff reasserts and re-avers all preceding paragraphs of this Complaint as though expressly set forth herein.

35. Plaintiff has, at all times relevant hereto, performed all the stipulations, conditions and agreements stated in said contract to be performed by Plaintiff at the time and in the manner therein specified.

36. Defendant Pekin failed and refused to perform its obligations under said contract.

37. Defendant Pekin conducted an unreasonable investigation of Plaintiff's claim.

38. Defendant Pekin delayed its adjustment of Plaintiff's claims.

39. Defendant Pekin unreasonably refused to pay the amounts due under the policy related to Plaintiff's damages and losses sustained, when Defendant Pekin knew it owed payments to Plaintiff.

40. Defendant Pekin failure to pay within a reasonable time frame and honor the conditions of Plaintiff's insurance contract amounts to breach of contract.

**COUNT II – GOOD FAITH AND FAIR DEALING –**

**BAD FAITH**

41. Plaintiff reasserts and re-avers all preceding paragraphs as though expressly set forth herein.

42. Despite Plaintiff's compliance with Defendant Pekin's claims process, and the fact that Plaintiff has submitted detailed information which supported their claimed losses and established their right to receive benefits pursuant to the terms of the policy, Defendant Pekin wrongfully deprived Plaintiff of the benefits provided for under the insurance contract and unreasonably delayed the adjustment of the insurance claim.

43. Defendant Pekin breached the contract and acted in bad faith towards Plaintiff by engaging in the following wrongful acts for the specific purpose of delaying

payments due to Plaintiff, to avoid making payments to Plaintiff, to cause gratuitous injury to Plaintiff and to attempt to frustrate Plaintiff in every way possible for receiving the benefit of the insurance contract Plaintiff had purchased in order to have peace of mind in the event of a loss, including, but not limited to:

a. By failing to pay Plaintiff at a time when Defendant Pekin knew that Plaintiff were entitled to benefits under the insurance policy and by low-balling their claim;

b. By low-balling Plaintiff's claims;

c. By unreasonably delaying adjustment of Plaintiff's claims;

d. By conducting an unreasonable investigation into the scope of damage caused Plaintiff's commercial property and personal property.

e. By not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims for loss;

f. By refusing to promptly and reasonably adjust and make payment to Plaintiff for benefits due under the policy;

44. Defendant Pekin refused to pay Plaintiff benefits due them under the policy.

45. Defendant Pekin's acts as alleged herein caused Plaintiff damages including frustration, aggravation, humiliation, stress, and anxiety.

46. As a result of Defendant Pekin's conduct as alleged herein, Plaintiff was forced to hire legal counsel in order for it to obtain coverage and try to obtain benefits

rightly due to it under the policy, and thus Plaintiff incurred legal fees because of Defendant Pekin's unreasonable conduct.

**WHEREFORE**, in accordance with the foregoing, Plaintiff requests that the Court enter judgment against Defendant as follows:

A. For any and all compensatory damages, including, but not limited to, unpaid benefits due to Plaintiff under the policy of insurance, emotional distress, interest, caused by Defendant Pekin's actions, and out-of-pocket expenses suffered by Plaintiff in an amount to be proven at trial;

B. For general and special damages, in an amount to be proven at trial;

C. For punitive damages against Defendant Pekin for its conduct alleged herein;

D. For Plaintiff's attorneys' fees and costs pursuant to A.R.S. §12-341.01 against Defendant Pekin;

E. For such other and further relief as the Court deems just and proper under the circumstances.

**DATED** this 24th day of July, 2025.

**TREON & SHOOK, PLLC**

By: [signature]
Daniel B. Treon
4600 N. 12th Street
Phoenix, Arizona 85014
*Attorney for Plaintiff*

of July, 2025 with:

Clerk of the Court
Maricopa County Superior Court

*/s/ Hayley Wynne*

# EXHIBIT B

Clerk of the Superior Court
*** Electronically Filed ***
K. Scott, Deputy
10/29/2025 1:17:13 PM
Filing ID 20847716

Daniel B. Treon (014911)
**TREON & SHOOK, PLLC**
4600 N. 12th Street
Phoenix, Arizona 85014
Phone: (602) 265-7100
Facsimile: (602) 265-7400
tsminutes@treonshook.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

**MCKINLEY INVESTMENT, LLC**, an Arizona limited liability company;

Plaintiff,

vs.

**PEKIN INSURANCE COMPANY, a foreign insurer; JOHN** and **JANE DOES 1-10**; **ABC CORPORATIONS 1-10**; and **XYZ PARTNERSHIPS 1-10**, fictitiously named.

Defendants.

Case No.: CV2025-026014

**FIRST AMENDED COMPLAINT**

(Civil – Breach of Contract and Bad Faith)

For this Complaint, Plaintiff Mckinley Investment, LLC ("Plaintiff" or "McKinley Investment") through undersigned counsel, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an Arizona limited liability company, with its principal place of businesses in Maricopa County, Arizona.

2. At times relevant to this Complaint, Plaintiff owned a commercial building in Maricopa County, Arizona.

3. Defendant Pekin Insurance Company (hereinafter "Defendant Pekin") is a foreign insurer engaged in the business of selling insurance in the State of Arizona.

4. Defendant Pekin caused events to occur within the State of Arizona which acts have given rise to the causes of action stated herein.

5. Defendants John and Jane Does I-X, ABC Corporations I-X and XYZ Partnerships I-X are individuals, corporations, or partnerships, respectively, or other incorporated or unincorporated associates subject to suit in a common name whose names are unknown to Plaintiff and who are, therefore, designated by fictitious names pursuant to Rule 10(f), Rules of Civil Procedure. Each of these Defendants caused Plaintiff's damages by breach of duties owed to Plaintiff or is responsible as a matter of law for acts of others who caused Plaintiff's damages by such negligence or breach of duty.

6. Venue is proper in this Court.

7. As a proximate result of the wrongful conduct of Defendant, Plaintiff has suffered damages in an amount in excess of the minimal jurisdictional limits of this Court.

**ALLEGATIONS COMMON TO ALL COUNTS**

8. Plaintiff reasserts and re-avers each of the allegations set forth in the preceding paragraphs as through expressly set forth herein.

9. Plaintiff purchased a general liability and casualty insurance policy from Defendant Pekin, Policy No.: 006073931, which contract provided coverage for damages to Plaintiff's commercial property caused by perils.

10. Plaintiff purchased this policy to protect Plaintiff's assets and to provide Plaintiff with security and peace of mind in the event of a loss.

11. Plaintiff McKinley Investment, LLC is owned by Chris and Christina Foster.

12. The Fosters also own a construction company, CNC Contracting, LLC ("CNC Contracting").

13. Plaintiff McKinley Investment's commercial building leased spaces to three tenants: CNC Contracting; Higher Wire (a lithium-ion battery recycling company); and Arcadia Carts (an electric golf cart company).

14. Plaintiff's commercial property and sustained damage as a result of September 4th, 2024 and September 8th, 2024 fires and water suppression efforts.

15. The fires destroyed and or damaged the entire McKinley Investment building, including the three suites rented to the three tenants, CNC Contracting, Higher Wire, and Arcadia Carts, and the contents of these three suites.

16. The Pekin commercial policy was active and in force at the time of the fire.

17. Plaintiff commercial property became unusable due to the damage caused by the fire, smoke, and water used to extinguish the fire and toxic chemicals from lithium batteries stored on the property by one of the tenants.

18. Plaintiff timely reported the loss to Defendant Pekin.

19. Defendant Pekin unreasonably and in bad faith adjusted Plaintiff's claim, including but not limited to the following:

a. Defendant Pekin failed to adjust fully Plaintiff's loss thus leaving un-repaired significant damage to Plaintiff's property.

b. Defendant Pekin created an unreasonably narrow scope of damage estimate for the remediation and repair of Plaintiff's property, and delayed amending its too-narrow scope.

c. Defendant Pekin refused to fully adjust Plaintiff's loss by pitting its interests in paying a little as possible against Plaintiff's interests in accomplishing timely repair of his condominium. In so doing, Defendant Pekin denied Plaintiff equal consideration, by elevating its interests above those of its insured's interests.

d. Pekin failed to conduct a reasonable investigation into the scope of its insured's loss, in myriad ways, including but not limited to:

i) Pekin failed to bring into the loss investigation a cause and origin expert;

ii) Pekin failed to document with photographs the loss and damage to McKinley Investment's building;

iii) Although the Phoenix Fire Department investigation of the fire determined two separate fire incidents occurred, which two separate fire incidents implicated a second loss under the Pekin policy and therefore a second availability of all policy limits, Pekin delayed concluding that a second loss occurred, and thus delayed payout of policy benefits. Timely payout of policy benefits would have allowed McKinley Investment to rebuild its building and thus begin to generate revenue through renting space to

tenants. As a result, McKinley Investment has not been able to rebuild and thus has been damaged by the delay.

Through its adjuster Vince Furriel:

e. Defendant Pekin acted in bad faith by trying to intimidate Plaintiff McKinley Investment LLC's owners, Chris and Christina Foster, into accepting his determinations about the amount of loss as final and that Pekin would pay no more than what Mr. Furriel determined should be paid, based on his own decisions, and without consideration of the actual losses.

Mr. Furriel effected this intimidation by bringing a handgun and a law-enforcement badge to his first meeting with Chris and Christina Foster, on September 5, 2024, the day after the fire. He placed the weapon and badge on the table and claimed he was a law enforcement officer in addition to working as an insurance adjuster.

i) Mr. Furriel's comments and actions during this meeting were outrageous and intended to intimidate the Fosters and undermine the Foster's belief in their own claims, and to undermine their will to press their claims.

ii) Mr. Furriel's outrageous comments during this first meeting included him telling the Fosters that they faced divorce due to the upcoming stress that the loss of their

building and adjustment process would cause them. Mr. Furriel's implication was clear: if the Fosters would just accept Mr. Furriel's determination of the loss amount, the adjustment would go quickly and without stress and thus the Fosters could save their marriage.

iii) Mr. Furriel furthered the intimidation by suggesting that the Fosters' marriage would become so strained by the stress of the loss of their business's building and adjustment that Chris Foster might turn to the comfort of prostitutes, but that he, Mr. Furriel, understood how a man might engage in that behavior given the stress. Mr. Furriel could prevent such bleak behavior if the Fosters would just place their trust in him and accept his value determination.

iv) At this first meeting, even before he inspected the loss site, Mr. Furriel attempted to get the Fosters to accept $650,000 as settlement of their company's loss.

v) Mr. Furriel's actions constituted unreasonable low-balling of Pekin's insured's claim.

vi) The Fosters, suspicious of Mr. Furriel's tactics and believing their destroyed building would take

significantly more to replace than Mr. Furriel's effort to get them to take only $650,000, called their insurance agent Craig Breinholdt for advice regarding the offer. Mr. Breinholt talked to Mr. Furriel and Chris Foster, and explained the offer was unreasonably low and explained what he understood the loss to be including its much greater value as well as how the policy's coverages would work to pay out much more for the loss.

f. Soon thereafter, Mr. Furriel attended a site inspection of McKinley Investment's burned building with other insurance company adjusters and origin and cause investigators/expert witnesses and others, and Chris Foster.

i) At this site inspection, Mr. Furriel acted with extreme and outrageous verbal aggression toward other parties, attempted to seize control of the entire property and claimed he as representative of Pekin had total authority over the premises, including the right to grant or deny any other person access, including Chris Foster.

ii) The point of Mr. Furriel's aggressive intimidation strategies was to cram down on McKinley Investment's loss valuation to pay out the claim for as little as possible.

iii) Mr. Furriel's conduct turned the adjustment into an adversarial experience for Pekin's insured.

g. Upon inspecting Plaintiff McKinley Investment's burned building, Mr. Furriel saw CNC Contracting business personal property that remained in its suite, as well as personal property kept on the site in the CNC Contracting suite, and owned by the Fosters. Mr. Furriel immediately coveted some of the property for his personal and his profit motives.

i) Mr. Furriel proceeded to pressure Chris Foster for Mr. Foster to give Mr. Furriel certain personal property that was in the CNC Contracting suite, or sell it to him very reduced prices.

ii) Mr. Furriel intimated to Chris Foster that adjustment of McKinley Investments' loss would go better for McKinley Investment if Mr. Foster would agree to give or sell at a very steep discount some of CNC's and his personal property to Mr. Furriel.

iii) Mr. Furriel pressured Chris Foster to give or sell him Chris' classic car that Chris had been restoring, a 1969 Datsun 510, and 1972 GMC short bed pick-up truck.

iv) Mr. Furriel also pressured Chris Foster to give and/or sell him at steep discount various construction equipment items owned by CNC.

v) In each instance, and with respect multiple items of construction equipment, Mr. Furriel pressured Chris Foster for gift or sale, each time insinuating that adjustment of McKinley Investment's losses would be paid more and more quickly if Mr. Foster would agree to Mr. Furriel's desires for the personal property.

vi) Mr. Furriel also injected himself into analysis of and presentation of a loss claim of the Foster's wholly separate entity, CNC Contracting's business property loss. Mr. Furriel did this as part of his *quid pro quo* scheme, as described herein, essentially doing the Fosters a favor by advancing their CNC Contracting loss claim with Secura Insurance Company, which insured CNC Contracting, so that the Fosters would acquiesce to Mr. Furriel's pressure that the Foster give or sell him, Mr. Furriel, more of their personal property and more of CNC Contracting's property.

20. Mr. Furriel secured some but not all payment of McKinley Investments loss. But he did so without documenting the facts of the loss with photographs of the damaged structure, complete estimates for repair, and other documentation necessary for loss adjustment and payment.

21. Mr. Furriel's supervisor approved of the payments to McKinley Investments.

22. Because of Mr. Furriel's misconduct, Pekin terminated Mr. Furriel.

23. Because of Mr. Furriel's misconduct, Pekin replaced Mr. Furriel with a different adjuster.

24. Because of Mr. Furriel's misconduct, Pekin terminated Mr. Furriel's supervisor and/or manager.

25. On information and belief, Mr. Furriel has acted as described herein to intimidate other Pekin insureds, including showing them his firearm and law enforcement badge, and pressuring them to give him or sell him at a steep discount the insured's personal property.

26. On information and belief, Mr. Furriel has acted as described herein to intimidate other Pekin insureds, including showing them his firearm and law enforcement badge, and pressuring them to give him or sell him at a steep discount the insured's personal property, including but not limited to an elderly business owner in Prescott, Arizona, a classic car company in Phoenix, Arizona, and a furniture store in Scottsdale, Arizona.

27. On information and belief, Defendant Pekin knew or had reason to know of Mr. Furriel's aggressive tactics with other Pekin insureds.

28. On information and belief, Defendant Pekin failed to conduct an adequate background investigation of Mr. Furriel, which would have revealed Mr. Furriel's aggressive tactics with other policy holders, including pre-loss litigation against him where he was accused of intentionally damaging property and threatening others related to property claims (*Braaten v. Vince Furriel Consulting*, CV2020-015576, Maricopa County Superior Court).

29. As a result of the conduct alleged herein, Pekin unreasonably delayed adjustment of the loss, including unreasonable delay of payment of money due under the second fire claim.

30. As a result of the conduct alleged herein, Pekin unreasonably delayed adjustment of the loss, including unreasonable delay of payment of money due under the second fire claim, which losses Plaintiff reasonably estimates to be $1,200,000 to $1,400,000 for the structure damage (ess $300,000 already paid, for a total of $900,000 to $1,100,000 still due), plus business income interruption losses for the second fire loss claim in the amount of $250,000, for a total of $1,150,000 - $1,350,000 still due for the second fire loss.

31. Pekin also has unreasonably delayed payment of additional amounts due under various other coverages within the policy, including but not limited to landscaping

damages, code upgrades, and other coverages Pekin to pay McKinley Investment because of Mr. Furriel's scheme alleged herein.

32. Defendant Pekin's actions as alleged herein delayed adjustment of the claim and forced Plaintiff to incur the expense, delay and great frustration and aggravation of additional procedural hoops to get the benefits due to Plaintiff under the insurance contract.

33. Upon information and belief, Defendant Pekin acted in the manner it did as alleged herein so as to lower claims payments for its own benefit, including increasing payments to its parent corporation and increasing compensation and other benefits to its officers, managers, and employers.

**COUNT I – BREACH OF CONTRACT**

34. Plaintiff reasserts and re-avers all preceding paragraphs of this Complaint as though expressly set forth herein.

35. Plaintiff has, at all times relevant hereto, performed all the stipulations, conditions and agreements stated in said contract to be performed by Plaintiff at the time and in the manner therein specified.

36. Defendant Pekin failed and refused to perform its obligations under said contract.

37. Defendant Pekin conducted an unreasonable investigation of Plaintiff's claim.

38. Defendant Pekin delayed its adjustment of Plaintiff's claims.

39. Defendant Pekin unreasonably refused to pay the amounts due under the policy related to Plaintiff's damages and losses sustained, when Defendant Pekin knew it owed payments to Plaintiff.

40. Defendant Pekin failure to pay within a reasonable time frame and honor the conditions of Plaintiff's insurance contract amounts to breach of contract.

**COUNT II – GOOD FAITH AND FAIR DEALING –**

**BAD FAITH**

41. Plaintiff reasserts and re-avers all preceding paragraphs as though expressly set forth herein.

42. Despite Plaintiff's compliance with Defendant Pekin's claims process, and the fact that Plaintiff has submitted detailed information which supported their claimed losses and established their right to receive benefits pursuant to the terms of the policy, Defendant Pekin wrongfully deprived Plaintiff of the benefits provided for under the insurance contract and unreasonably delayed the adjustment of the insurance claim.

43. Defendant Pekin breached the contract and acted in bad faith towards Plaintiff by engaging in the following wrongful acts for the specific purpose of delaying payments due to Plaintiff, to avoid making payments to Plaintiff, to cause gratuitous injury to Plaintiff and to attempt to frustrate Plaintiff in every way possible for receiving the benefit of the insurance contract Plaintiff had purchased in order to have peace of mind in the event of a loss, including, but not limited to:

a. By failing to pay Plaintiff at a time when Defendant Pekin knew that Plaintiff were entitled to benefits under the insurance policy and by low-balling their claim;

b. By low-balling Plaintiff's claims;

c. By unreasonably delaying adjustment of Plaintiff's claims;

d. By conducting an unreasonable investigation into the scope of damage caused Plaintiff's commercial property and personal property.

e. By not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims for loss;

f. By refusing to promptly and reasonably adjust and make payment to Plaintiff for benefits due under the policy;

44. Defendant Pekin refused to pay Plaintiff benefits due them under the policy.

45. Defendant Pekin's acts as alleged herein caused Plaintiff damages including frustration, aggravation, humiliation, stress, and anxiety.

46. As a result of Defendant Pekin's conduct as alleged herein, Plaintiff was forced to hire legal counsel in order for it to obtain coverage and try to obtain benefits rightly due to it under the policy, and thus Plaintiff incurred legal fees because of Defendant Pekin's unreasonable conduct.

**WHEREFORE**, in accordance with the foregoing, Plaintiff requests that the Court enter judgment against Defendant as follows:

A. For any and all compensatory damages, including, but not limited to, unpaid benefits due to Plaintiff under the policy of insurance, emotional distress, interest, caused by Defendant Pekin's actions, and out-of-pocket expenses suffered by Plaintiff in an amount to be proven at trial;

B. For general and special damages, in an amount to be proven at trial;

C. For punitive damages against Defendant Pekin for its conduct alleged herein;

D. For Plaintiff's attorneys' fees and costs pursuant to A.R.S. §12-341.01 against Defendant Pekin;

E. For such other and further relief as the Court deems just and proper under the circumstances.

**DATED** this 29th day of October 2025.

**TREON & SHOOK, PLLC**

By: */s/ Daniel B. Treon*
Daniel B. Treon
4600 N. 12th Street
Phoenix, Arizona 85014
*Attorney for Plaintiff*

**E-FILED** this 29th day
of October 2025 with:

Clerk of the Court
Maricopa County Superior Court

*/s/ Hayley Wynne*

# EXHIBIT C

Clerk of the Superior Court
*** Electronically Filed ***
A. Mariscal, Deputy
7/24/2025 5:02:08 PM
Filing ID 20262244

Person/Attorney Filing: Daniel Treon
Mailing Address: 4600 N. 12th Street
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)265-7100
E-Mail Address: tsminutes@treonshook.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 014911, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

McKinley Investment, LLC
Plaintiff(s),
v.
Pekin Select Insurance Company
Defendant(s).

Case No. CV2025-026014

**CERTIFICATE OF COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the Local Rules of Practice for the Maricopa County Superior Court, and I further certify that this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this July 24, 2025

By: Daniel Treon /s/
Plaintiff/Attorney for Plaintiff

AZturboCourt.gov Form Set #1127772

# EXHIBIT D

Person Filing: Daniel Treon
Address (if not protected): 4600 N. 12th Street
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (602)265-7100
Email Address: tsminutes@treonshook.com
Representing [☐ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 014911, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Mariscal, Deputy
7/24/2025 5:02:08 PM
Filing ID 20262245

DEPT OF INSURANCE & FINANCIAL INSTITUTIONS
OCT 14 2025
TIME 10:41 AM
SERVICE OF PROCESS

**SUPERIOR COURT OF ARIZONA**
**IN MARICOPA COUNTY**

Case Number: **CV2025-026014**

McKinley Investment, LLC
Name of Plaintiff

**SUMMONS**

AND

Pekin Select Insurance Company
Name of Defendant

**WARNING:** This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.

**FROM THE STATE OF ARIZONA TO:** Pekin Select Insurance Company
Name of Defendant

1. **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #1182772

3. If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *July 24, 2025*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. MARISCAL*
Deputy Clerk




If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #1927172

# EXHIBIT E

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
10/17/2025
CT Log Number 550396877

## Service of Process Transmittal Summary

**TO:** Tyler Petersen, Vice President - General Counsel
Pekin Life Insurance Company
2505 COURT ST
PEKIN, IL 61558-0001

**RE:** **Process Served in Arizona**

**FOR:** Pekin Select Insurance Company (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MCKINLEY INVESTMENT, LLC, an Arizona limited liability company vs. PEKIN SELECT INSURANCE COMPANY |
| **CASE #:** | CV2025026014 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Phoenix, AZ |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 10/17/2025 |
| **JURISDICTION SERVED:** | Arizona |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1ZX212780100912099<br>Image SOP<br>Email Notification, Tyler Petersen executiveadministration@pekininsurance.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>3800 N. Central Avenue<br>Suite 460<br>Phoenix, AZ 85012<br>866-539-8692<br>CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# EXHIBIT F

« Return to search results

## Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2025-026014 | **Judge:** | Gordon, Michael |
| **File Date:** | 7/24/2025 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| McKinley Investment L L C | Plaintiff | | Daniel Treon |
| Pekin Select Insurance Company | Defendant | | Pro Per |
| Pekin Insurance Company | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 10/29/2025 | AMC - Amended Complaint | 10/30/2025 | |
| **NOTE:** | FIRST Amended Complaint | | |
| 10/16/2025 | AFS - Affidavit Of Service | 10/17/2025 | |
| **NOTE:** | PEKIN SELECT INSURANCE COMPANY | | |
| 10/1/2025 | 322 - ME: Notice Of Intent To Dismiss | 10/1/2025 | |
| 7/24/2025 | COM - Complaint | 7/25/2025 | |
| **NOTE:** | Complaint | | |
| 7/24/2025 | CSH - Coversheet | 7/25/2025 | |
| **NOTE:** | Civil Cover Sheet | | |
| 7/24/2025 | CCN - Cert Arbitration - Not Subject | 7/25/2025 | |
| **NOTE:** | Certificate Of Compulsory Arbitration - Is Not Subject To | | |
| 7/24/2025 | SUM - Summons | 7/25/2025 | |
| **NOTE:** | Summons | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|

**No records found.**